**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

TERESA DENISE JONES,            )
                                )
            Plaintiff,          )
                                )
                                )  Case No. CIV-20-351-RAW-KEW
                                )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
            Defendant.          )

**REPORT AND RECOMMENDATION**

Plaintiff Teresa Denise Jones (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. She has a high school education and worked in the past as a grocery clerk, school childcare attendant, home care giver, receptionist, and car driver. Claimant alleges an inability to work beginning on June 7, 2017, due to limitations resulting from a herniated disc at L5 and S1, back fusion surgery, lifting restrictions, and high blood pressure.

### Procedural History

On March 8, 2018, Claimant protectively filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Claimant's

3

application was denied initially and upon reconsideration. On June 4, 2019, ALJ Elisabeth McGee conducted a hearing in Fort Smith, Arkansas, at which Claimant testified. On November 13, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on August 3, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to consider all of Claimant's impairments at step two; (2) failing to perform a proper step five determination; and (3) failing to perform an adequate assessment of the effect of Claimant's obesity on her disability.

## Step Two Analysis

In her decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease of the lumbar spine after fusion, lumbar radiculopathy, chronic pain syndrome, degenerative

4

joint disease of the bilateral knees, and obesity. (Tr. 12). She determined Claimant could perform sedentary work, except she could not climb ladders, ropes, or scaffolds. Claimant could occasionally climb ramps and stairs and stoop. She required a sit/stand option while remaining on task. (Tr. 13).

After consultation with the VE, the ALJ determined Claimant could perform the representative jobs of ticket counter and document preparer, both of which the ALJ found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant had not been under a disability since March 8, 2018, the date the application was filed. (Tr. 19).

Claimant argues that the ALJ erred at step two because she determined Claimant's abdominal sore, her "mini-stroke," hypertension, and mixed hyperlipidemia were non-severe impairments. She contends that the ALJ ignored that she had been diagnosed with such impairments and received treatment for them. Claimant maintains that this resulted in the ALJ's failing to consider all of her impairments in combination throughout the disability process.

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant must demonstrate she has a severe impairment that "results from

5

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28, 1985 WL 56856 (Jan. 1, 1985). The focus is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 2000 WL 1028250, at *1 (10th Cir. 2000) (disability determinations turn on functional consequences, not the causes of a condition).

6

To the extent Claimant contends her diagnoses for abdominal sore, mini-stroke, hypertension, and mixed hyperlipidemia should have been included as severe impairments at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

The Court finds no error by the ALJ. The ALJ determined Claimant's abdominal sore, hypertension, mini-stroke, and mixed hyperlipidemia had no more than a minimal effect on Claimant's physical and mental ability to do basic work activities and were therefore non-severe impairments. In reaching this conclusion, the ALJ discussed evidence of Claimant's draining sore on her abdomen from October of 2017. She noted that the diagnosis was cellulitis and Claimant was prescribed antibiotic treatment. There is no

7

evidence that Claimant received further treatment for her abdominal sore. (Tr. 12, 321-23). The ALJ also noted that Claimant reported to her primary physician in July of 2018 that she suffered from a "mini-stroke." Claimant reported dizziness, near syncope, numbness, and difficulty speaking. The ALJ referenced a July of 2018 CT scan of Claimant's brain and ultrasound of her carotid artery, performed because of her stroke symptoms, which were both normal. (Tr. 12-13, 466-67, 468-69). Moreover, the ALJ noted Claimant was diagnosed with high cholesterol and high blood pressure and was prescribed medication. (Tr. 12-13, 309-11, 463-65). Her blood pressure was noted to be stable in July of 2018. (Tr. 464). Further, Claimant testified it was her back and associated pain that prevented her from working. (Tr. 47). Upon finding these impairments nonsevere, the ALJ stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]." (Tr. 13).

### Step Five Determination

Claimant next asserts that when presenting the hypothetical question to the VE, which included the limitations the ALJ adopted in the RFC, the ALJ failed to properly specify "how much sitting and standing [could] be performed while a person 'remains on task.'" Plaintiff's Opening Brief, p. 7 (Docket Entry #14). She also contends that the ALJ failed to have the VE explain how

8

Claimant could perform the identified jobs while switching from sitting to standing and remaining on task. She maintains that this is especially important because the jobs identified by the VE require frequent and constant reaching, handling, and fingering.

The ALJ first presented the VE with a hypothetical limiting Claimant to light work, but Claimant could not climb ladders, ropes, or scaffolds and could occasionally climb ramps or stairs and stoop. The ALJ added to the hypothetical that she wanted to include "light jobs within those limitations where you have the ability to sit or stand at will." (Tr. 62). The VE testified there "would be no competitive employment available." (Tr. 62). The ALJ then changed the hypothetical to include light work with the same limitations, but Claimant could sit or stand at will while remaining on task. The VE again testified that there "would be no competitive employment available[.]" (Tr. 63). The ALJ then proposed another hypothetical to the VE for sedentary work with no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps and stairs, and occasional stooping. The VE testified there was no past relevant work Claimant could perform, but the jobs of telephone order clerk, ticket counter, and document preparer were available in the national economy. (Tr. 64). The ALJ then had the following exchange with the VE:

> Q [ALJ:] So, now at the sedentary level, would there be jobs available with remaining on task and sitting and standing?

> A [VE:] Remaining on task, the Document Preparer, they could on that one. The Telephone Order Clerk, if they're on the phone, Your Honor, and they've got to stand at will, that may be a - - that may not be possible. So, I would strike that one.
>
> Q [ALJ:] Okay.
>
> A [VE:] The Ticket Counter, they would be able to do that. That's more of your bookkeeping, auditing clerk. So, they would be able to do that, Your Honor.

(Tr. 64).

Social Security Ruling 96-9p requires that the ALJ be "specific as to the frequency of the individual's need to alternate sitting and standing" when determining an RFC for a claimant that is limited to performing less than a full range of sedentary work with an option to sit/stand. 1996 WL 374185, at *7 (July 2, 1996). Here, by specifying to the VE that Claimant could sit or stand at will, the ALJ clarified the frequency with which Claimant would alternate sitting and standing. The VE's testimony makes it clear that even when the RFC changed to sedentary work, she understood that the sit/stand option remained at will. *See Jimison v. Colvin*, 513 Fed. Appx. 789, 792 (10th Cir. 2013) ("The option to sit or stand at will permits claimant to control the frequency at which she alternates positions. No greater specificity would be possible."). Moreover, the ALJ's hypothetical included that Claimant required the sit/stand option while remaining on task. Claimant's argument that the VE did not properly consider her

10

ability to switch between sitting and standing and remaining on task is unfounded. As discussed in the testimony above, the VE specifically considered Claimant's ability to perform the identified jobs while remaining on task with a sit/stand option at will, testifying that the originally identified job of telephone order clerk would not be available, but the ticket counter and document preparer jobs would remain. This Court finds no error because the hypothetical to the VE was sufficiently specific regarding a sit/stand option at will while remaining on task.

Claimant also asserts the ALJ did not adequately consider her pain and medication when assessing the RFC. She maintains it is reasonable to expect that she could not remain on task throughout the workday, would need to take unexpected breaks, and would have more frequent absences. The ALJ's discussion of Claimant's RFC, however, demonstrates that she considered Claimant's complaints of pain and her use of medication. (Tr. 14-17). Taking into consideration the medical record and Claimant's testimony, the ALJ concluded the RFC was supported by Claimant's testimony that she could drive when necessary, grocery shopped with an electric cart, handled personal finances, could pay attention for 20 to 30 minutes, could follow instructions, got along with family, friends, and authority figures, and had never been fired or laid off for failing to get along with others. (Tr. 17-18). The Court finds no error.

**Consideration of Obesity**

Claimant contends that the ALJ failed to consider the effect her obesity had on her disability. She contends the ALJ made no mention of obesity at step two and then failed to properly consider it in the RFC. Claimant asserts her obesity should have been considered with her heart and skeletal impairments pursuant to Social Security Ruling 19-2p.

Social Security Ruling 19-2p requires an ALJ consider that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" when assessing the RFC. Soc. Sec. Rul. 19-2p, 2019 WL 2374244, *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment(s)." *Id*. at *2. Each case is evaluated based on the information in the record, resulting in "an individualized assessment of the effect of obesity on a person's functioning[.]" *Id*. at *2, *4. "[G]eneral assumptions about the severity or functional effects of obesity combined with [other] impairments" will not be made. *Id*. at *4.

The ALJ considered Claimant's obesity in the decision at step two and then again when determining Claimant's RFC. The ALJ determined Claimant's obesity was a severe impairment at step two. (Tr. 12). The ALJ considered all of Claimant's medically determinable impairments, including those she found nonsevere,

when determining Claimant's RFC. (Tr. 13). The ALJ discussed the evidence in detail, including Claimant's complaints of back pain, numbness in her feet, and headaches. She noted several diagnoses based upon Claimant's examinations, including muscle strain, low back pain with numbness and neuropathy to the lower extremities, headaches, hypertension with multiple high readings, and chronic pain. She discussed Claimant's examination findings and her treatment with various medications, steroid injections, physical therapy, recommendations for a back brace, eventual surgery (L4-5 laminectomy with a medial facetectomy and foraminotomy and a lumbar interbody fusion), and pain management. The ALJ referenced Claimant's height and weight from certain treatment notes, she noted Claimant's report to her treating doctor that her neurosurgeon advised her to lose sixty pounds, and that after her surgery, Claimant was counseled about weight loss. The ALJ further noted that after her surgery, Claimant reported an increased activity level and that she was pleased with her progress, but she did report some pain. A post-surgery MRI of the lumbar spine revealed moderate findings. (Tr. 14-18).

After discussing the evidence, including Claimant's obesity, the ALJ noted Claimant had remained "severely overweight throughout the relevant timeframe." She specifically considered that "obesity is a risk factor that increases . . . [the] chances of developing impairments in most body systems and commonly leads

to, and often complicates, chronic disease of the cardiovascular, respiratory, and musculoskeletal body systems." (Tr. 17). She then discussed the opinion evidence, including findings from the consultative examiner and opinions from the reviewing physicians. The reviewing physicians determined Claimant could perform a decreased range of light work with certain postural limitations. After considering the consultative examiner's findings and the reviewing physicians' opinions, the ALJ found them to be only "somewhat persuasive." She noted that "after taking into account the claimant's degenerative joint disease at her knees and her obesity, . . . the claimant retained only the ability to perform a limited range of sedentary work, which [was] also supported by the recent MRI of the claimant's lumbar spine." (Tr. 17).

The ALJ specifically considered Claimant's obesity in combination with her other impairments and referenced that she was limiting Claimant to sedentary work based upon her obesity. (Tr. 17). This is sufficient to establish that Claimant's obesity was considered with her other impairments in the RFC.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given

fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

    DATED this 4th day of March, 2022.

                                                    */s/ Kimberly E. West*
                                                  KIMBERLY E. WEST
                                                  UNITED STATES MAGISTRATE JUDGE